# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Montyce H.*, 2011 IL App (1st) 101788

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. MONTYCE H., Respondent-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-10-1788 |
| Filed | November 18, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The adjudication that respondent minor was delinquent based on aggravated unlawful use of a weapon was upheld over his contention that the aggravated unlawful use of a weapon statute violated the constitutional right to bear arms, since the statute does not offend the second amendment, it serves an important governmental objective, and the statute employs means substantially related to its objective. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-JD-3959; the Hon. Carl Anthony Walker, Judge, presiding. |
| Judgment | Affirmed. |

| | |
|---|---|
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Thomas G. Gonzalez, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Douglas P. Harvath, and Jessica R. Bargmann, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE R. GORDON delivered the judgment of the court with opinion. |
| | Justices Cahill and Lampkin concurred in the judgment and opinion. |

**OPINION**

¶ 1     The sole issue on this direct appeal is whether the aggravated unlawful use of a weapon statute, insofar as it criminalizes the possession of a loaded, uncased and accessible firearm outside the home, violates the constitutional right to bear arms. Respondent concedes that the Illinois Appellate Court has considered several times whether this exact same statute violates this exact same right and has held that it does not, every time. *People v. Dawson*, 403 Ill. App. 3d 499, 510 (2010); *People v. Aguilar*, 408 Ill. App. 3d 136, 142-150 (2011); *People v. Mimes*, 2011 IL App (1st) 082747, ¶ 82 ("defendant's AUUW conviction must stand because the challenged statutory provisions do not violate either the second amendment or the Illinois Constitution"). However, he asks us to find that our precedent was wrongly decided. This we decline to do. Therefore, we affirm his adjudication of delinquency.

¶ 2     Respondent Montyce H. was 15 years old when he was arrested and charged on September 29, 2009, in a petition for adjudication of wardship. The petition contained a total of four counts: three counts of aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a) (West 2008)), and one count of unlawful possession of a firearm (720 ILCS 5/24-3.1 (West 2008)). After a trial on December 30, 2009, the trial court "hereby found" respondent "to be delinquent on all 4 counts." However, the trial court then stated that it was entering judgment on only the first count and that the other counts were "merged into one." On May 13, 2010, the trial court sentenced respondent to 18 months of probation

¶ 3     The only count upon which judgment was entered was a count for aggravated unlawful use of a firearm. The statute for aggravated unlawful use of a firearm lists several different "factors," any one of which will make the use "aggravated." 720 ILCS 5/24-1.6(a)(3) (West 2008). The count supporting respondent's conviction charged the "factor[ ]" that the firearm "was uncased, loaded and immediately accessible." 720 ILCS 5/24-1.6(a)(3)(A) (West 2008). The statute criminalizes possession of an uncased, loaded and accessible firearm, only if it is outside the home. 720 ILCS 5/24-1.6(a)(1) (West 2008).

¶ 4     In his appellate brief, respondent raised two claims: (1) that the aggravated unlawful use

of a weapon statute, which criminalizes the possession of a loaded, uncased and accessible firearm outside the home, violates both federal and state guarantees of the right to bear arms; and (2) that the unlawful possession of firearms statute, insofar as it criminalizes a 15-year-old's possession of a handgun, violates both the federal and state guarantees of the right to bear arms.

¶ 5    Since respondent was found delinquent on an aggravated use count, the unlawful possession statute is not properly before us. *Aguilar*, 408 Ill. App. 3d at 150 ("we find that we cannot review defendant's conviction for unlawful possession of a firearm because the trial court did not impose sentence"); *People v. Baldwin*, 199 Ill. 2d 1, 5 (2002) ("Absent a sentence, a conviction is not a final and appealable judgment."). In addition, although respondent claims in the headings in his brief to be raising a state challenge as well as a federal challenge, there is no discussion of the Illinois constitutional right in his brief. His discussion of the aggravated use statute is based entirely on the second amendment right found in the United States constitution and the case law interpreting it. "Points not argued are waived ***." Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008); *Wilson v. Cook County*, 407 Ill. App. 3d 759, 775-76 (2011) (finding that plaintiffs had waived any argument concerning the Illinois Constitution's right to bear arms where they made a "one-sentence statement" and failed to provide any support or analysis).

¶ 6    Thus, the issue before us on this appeal is solely whether the aggravated unlawful use of a weapon statute, insofar as it criminalizes the possession of a loaded, uncased and accessible firearm outside the home, violates the federal constitutional right to bear arms.

¶ 7                              BACKGROUND
¶ 8    On this direct appeal, the facts are not in dispute. Respondent in his brief to this court admits that the following facts are true:

> "On September 28, 2009, around 9:43 p.m. Officer Pedraza was on patrol with another marked squad car on the 6400 block of South Peoria when officers noticed a white vehicle double parked in the middle of the road partially blocking traffic. The police cars stopped next to the white car. A male identified in court as Montyce was leaning inside the white car on the passenger's side. Once the officers pulled up, Montyce looked in their direction and ran off grabbing his waistband as he ran. A foot chase ensued, during which Montyce tossed a gun in a nearby gangway. Montyce was quickly arrested a couple [of] houses away.

> Officer Pedroza recovered the loaded handgun from the gangway and kept it in his possession until he tendered it at the station to one of his partners for inventory. The gun was inventoried in Pedroza's possession."

Thus, in his brief to this court, respondent admits that "Montyce tossed a gun in a nearby gangway."

¶ 9                               ANALYSIS
¶ 10    As we previously observed, the sole issue on this appeal is whether the aggravated

unlawful use of a weapon statute, insofar as it criminalizes the possession of a loaded, uncased and accessible firearm outside the home, violates the federal constitutional right to bear arms.

¶ 11                                    I. Standard of Review

¶ 12        The question of a statute's constitutionality is reviewed *de novo*. *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 200 (2009); *People v. Cornelius*, 213 Ill. 2d 178, 188 (2004). Statutes are presumed to be constitutional, and the party challenging the constitutionality of a statute has the burden of overcoming this presumption. *Cornelius*, 213 Ill. 2d at 189. After listening to the parties' arguments, a reviewing court should attempt to construe the statute as constitutional. *Cornelius*, 213 Ill. 2d at 189. If the reviewing court has any doubt about how to construe the statute, it should resolve that doubt in favor of finding the statute constitutional. *Cornelius*, 213 Ill. 2d at 189. "This is not to mean that statutes are unassailable" but, rather, that they enjoy a strong presumption of validity. *Cornelius*, 213 Ill. 2d at 190.

¶ 13        Although respondent did not challenge the constitutionality of the statute at trial, a constitutional challenge to a criminal statute can generally be raised at any time. *In re J.W.*, 204 Ill. 2d 50, 61 (2003). Accordingly, respondent has not waived his constitutional challenge to the statute, even though he first raised this challenge in the appellate court. *J.W.*, 204 Ill. 2d at 61-62.

¶ 14                              II. Facial and Applied Challenges

¶ 15        Respondent challenges the constitutionality of the statute both as applied and on its face. "The difference between an as-applied and a facial challenge is that if a plaintiff[1] prevails in an as-applied claim, he may enjoin the objectionable enforcement of a statute only against himself, while a successful facial challenge voids enactment in its entirety and in all applications." *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 498 (2008).

¶ 16        This difference affects the scope of our review, because the facts of a defendant's case become relevant only if he or she brings an as-applied challenge. In an "as-applied" challenge, the challenging party contests only how the statute was applied against him or her within a particular context, and as a result, the facts of his or her particular case become relevant. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 306 (2008). By contrast, in a facial challenge, the facts of his or her particular case do not affect our review.

¶ 17        Since a successful facial challenge will void the statute for all parties in all contexts, it is "the most difficult challenge to mount successfully." *Napleton*, 229 Ill. 2d at 305. " 'Facial invalidation "is, manifestly, strong medicine" that "has been employed by the court sparingly and only as a last resort." ' " *Poo-bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009) (quoting *National Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998), quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)).

_____

[1]This quote is from a civil case.

¶ 18    Respondent claims that the statute is unconstitutional, not only on its face, but also as applied to him. However, he offers no separate "as applied" arguments, and we can think of no reason why a 15-year-old would have a greater right to possess a loaded handgun on the street than an adult. The United States Supreme Court has recently emphasized that the need for self-defense in the home is at the core of the second amendment. *McDonald v. City of Chicago*, 561 U.S. ___, ___, 130 S. Ct. 3020, 3050 (2010) (plurality op.) ("the Second Amendment protects the right to possess a handgun in the home for the purpose of self-defense"). However, respondent has not argued that, at the moment of his offense, he had specific fears or a heightened need for self-defense or that he was anywhere near or en route to his home. Thus, we find unpersuasive his assertion of an "as applied" challenge, and we will proceed to review his arguments in the context of a facial challenge.

¶ 19                          III. Constitutional Right and Statute at Issue

¶ 20    The constitutional right at issue is the right to bear arms. The second amendment to the federal constitution provides that: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II.

¶ 21    The statute at issue is quoted below. As we noted above, the trial court found respondent delinquent based on count I in the delinquency petition, and count I charged him with violating the following statute:

"A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode or fixed place of business any pistol, revolver, stun gun or taser or other firearm [and]
                              ***
(3) One of the following factors is present:

(A) the firearm possessed was uncased, loaded and immediately accessible at the time of the offense[.]" 720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008).

¶ 22    Section (1) quoted above was amended by Public Act 96-742 to state "except when on his or her land or in his or her own abode, *legal dwelling*, or fixed place of business, *or on the land or in the legal dwelling of another person as an invitee with that person's permission*." Pub. Act 96-742 (eff. Aug. 25, 2009) (italics denotes new language); *Aguilar*, 408 Ill. App. 3d at 139-40. In essence, our legislature amended the statute to expand the exceptions section to include in his or her "legal dwelling" and when he or she is "on the land or in the legal dwelling of another person as an invitee with that person's permission." Pub. Act 96-742 (eff. Aug. 25, 2009); *Aguilar*, 408 Ill. App. 3d at 140. This expansion became effective prior to respondent's offense date. However, neither party is arguing that these new exceptions apply to the case at bar. Therefore, the discrepancy between the statute as charged and the amended statute has no effect on our review.

¶ 23    As we previously observed, the appellate court has upheld the constitutionality of the

charged statute, several times. *Dawson*, 403 Ill. App. 3d at 510 (recent United States Supreme Court cases "do not define the fundamental right to bear arms to include activity barred by the AUUW statute"); *Aguilar*, 408 Ill. App. 3d at 146 ("[w]e find that the AUUW statute does not violate defendant's second amendment rights"); *Mimes*, 2011 IL App (1st) 082747, ¶ 82 ("defendant's AUUW conviction must stand because the challenged statutory provisions do not violate either the second amendment or the Illinois Constitution").[2] In all three of these cases, the appellate court considered the exact same factor of the same statute that is before us now (720 ILCS 5/24-1.6(a)(3)(A) (West 2008)) and upheld it against a second amendment challenge. *Aguilar*, 408 Ill. App. 3d at 142 (deciding that the preamendment statute applied to the case before it); *Dawson*, 403 Ill. App. 3d at 506 (quoting statute); *Mimes*, 2011 IL App (1st) 082747, ¶ 51 (quoting statute).

¶ 24   Respondent's first argument is that the Illinois "ban on loaded handguns outside of one's home contradicts the founder's intent," and he cites in support the United States Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), as well as its decision in *McDonald v. City of Chicago*, ___ U.S. ___, 130 S. Ct. 3020 (2009).

¶ 25   In *Heller*, the United States Supreme Court stated: "we hold that the District [of Columbia's] ban on handgun possession *in the home* violates the Second Amendment, as does its prohibition against rendering any lawful firearm *in the home* operable for the purpose of immediate self-defense." (Emphasis added.) *Heller*, 554 U.S. at 635.

¶ 26   In *McDonald*, a plurality of the Court found that the right recognized in *Heller* was applicable to the states through the due process clause of the fourteenth amendment. *McDonald*, 561 U.S. at ___, 130 S. Ct. at 3050. The plurality stated: "In *Heller*, we held that the Second Amendment protects the right to possess a handgun *in the home* for the purpose of self-defense. *** We therefore hold that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller*." (Emphasis added.) *McDonald*, 561 U.S. at ___, 130 S. Ct. at 3050.

¶ 27   Respondent relies on these recent United States Supreme Court cases to argue that a ban on loaded handguns outside of one's home violates the second amendment. The Illinois Appellate Court has rejected this argument at least three times before in published opinions. In *Aguilar*, we found that "the decisions in *Heller* and *McDonald* were limited to interpreting the second amendment's protection of the right to possess handguns in the home, not the right to possess handguns outside the home." *Aguilar*, 408 Ill. App. 3d at 143. Again in *Dawson*, we stated "the *Heller* Court ultimately limited its holding to the question presented–that the second amendment right to bear arms protected the right to possess a commonly used firearm *** in the home for self-defense purposes. [Citation.] *McDonald* also addressed the limited question of whether a ban on the possession of a handgun in the home violated the second amendment right to bear arms." *Dawson*, 403 Ill. App. 3d at 508.

---

[2]In *People v. Williams*, 405 Ill. App. 3d 958 (2010), the Fourth Division of the First District affirmed the defendant's AUUW conviction based on carrying a pistol in his pocket as he walked down the street. However, our supreme court later directed the Fourth Division to vacate that judgment on other grounds. *People v. Williams*, No. 111594 (Ill. Sept. 28, 2011) (supervisory order).

And again in *People v. Ross*, 407 Ill. App. 3d 931 (2011), we held: "*Heller* applies only to the question presented–that the second amendment right to bear arms protected the right to possess a handgun in the home for self-defense purposes. [Citation.] *McDonald* also addressed the limited question of whether a ban on the possession of a handgun in the home violated the second amendment right to bear arms." *Ross*, 407 Ill. App. 3d at 939-40.

¶ 28 Respondent offers no new argument about why we should depart from our precedent, and we decline his offer to do so.

¶ 29 Respondent's second argument is that the applicable standard of review is strict scrutiny and that the statute fails under this test. However, every Illinois appellate panel that has considered the applicable level of scrutiny after *Heller* and *McDonald* has rejected strict scrutiny. See, *e.g.*, *Aguilar*, 408 Ill. App. 3d at 145 (rejecting strict scrutiny), 146 ("we find intermediate scrutiny to be the appropriate standard in the present case" for the aggravated unlawful use of a weapon statute); *Mimes*, 2011 IL App (1st) 082747, ¶ 74 ("We find that intermediate scrutiny is the appropriate level of scrutiny to apply to the second amendment challenge at issue here," the aggravated unlawful use of a weapon statute.); *Ross*, 407 Ill. App. 3d at 939 ("Recently, this district in *Aguilar* [citation] applied the intermediate scrutiny standard in upholding the constitutionality of the aggravated unlawful use of a weapon statute and we also find it to be the appropriate standard in the present case" involving the armed habitual criminal statute.); *People v. Davis*, 408 Ill. App. 3d 747, 749 (2011) (applying intermediate scrutiny to the unlawful use of a weapon by a felon and the armed habitual criminal statute); *Wilson*, 407 Ill. App. 3d at 768 (applying intermediate scrutiny to uphold a statute banning assault weapons).[3] Again, defendant offers us no new argument about why we should depart from our well-established precedent.

¶ 30 Respondent's third argument is that the statute cannot survive any heightened level of scrutiny, whether it be strict scrutiny or an intermediate level of scrutiny.

¶ 31 Under intermediate scrutiny, a regulation can survive only if it (1) serves "important governmental objectives" and (2) employs means that are "substantially related to the achievement of those objectives." (Internal quotation marks omitted.) *United States v. Virginia*, 518 U.S. 515, 533 (1996); *United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010) (the regulation must serve an important objective and "the fit between the challenged regulation and the asserted objective [must] be reasonable, not perfect"); *People v. Davis*, 408 Ill. App. 3d 747, 749 (2011). Applying this two-part test to the charged statute, we find that it passes intermediate scrutiny. This is at least the third time that we have found that this same statute passes intermediate scrutiny. *Aguilar*, 408 Ill. App. 3d at 146 ("We find that the AUUW statute does not violate defendant's second amendment rights because it is substantially related to [an] important governmental objective and the fit between the AAUW

---

[3]In *Williams*, the Fourth Division of the First District rejected strict scrutiny and applied the rational basis test to affirm defendant's AUUW conviction. *Williams*, 405 Ill. App. 3d at 963. However, as noted earlier, our Illinois Supreme Court later directed the Fourth Division to vacate that opinion on other grounds. *People v. Williams*, No. 111594 (Ill. Sept. 28, 2011) (supervisory order).

statute and the governmental objective [is] reasonable."); *Mimes*, 2011 IL App (1st) 082747, ¶ 74.

¶ 32    First, we find, as we have found before, that the statute serves an important governmental objective. "[T]his court [previously] looked at the history and language of the AUUW statute and determined that its overall purpose is to protect the public and police enforcement officers from the inherent dangers and threats to safety posed by any person carrying in public a loaded and immediately accessible firearm on his [or her] person or in his [or her] vehicle." *Mimes*, 2011 IL App (1st) 082747, ¶ 75 (citing *People v. Marin*, 342 Ill. App. 3d 716, 723-24 (2003)); *Aguilar*, 408 Ill. App. 3d at 146 (the purpose of the AUUW statute is to prevent the inherent dangers to police officers and the public from a person carrying a loaded and accessible firearm, even if that person lacks criminal intent (citing *People v. Sole*, 357 Ill. App. 3d 988, 992 (2005), citing *People v. Pulley*, 345 Ill. App. 3d 916, 925 (2004))).

¶ 33    Second, we find, as we have found before, that the means employed by the statute are substantially related to its asserted objective. *Mimes*, 2011 IL App (1st) 082747, ¶ 74. The fit between a statute's method and its objective must be reasonable; but it does not have to be perfect. *Mimes*, 2011 IL App (1st) 082747, ¶ 74; *Wilson*, 407 Ill. App. 3d at 767 (citing *United States v. Reese*, 627 F.3d 792, 801 (10th Cir. 2010)). As we have explained before,

> "Contrary to defendant's assertion that the AUUW imposes a 'blanket prohibition' on carrying firearms outside the home, the statute is limited to preventing the carrying of loaded, uncased and accessible firearms in public on the street. Certainly, the prohibited place at issue here, *i.e.*, in public on the street, is broad. Nevertheless, the prohibition is justified by the potential deadly consequences to innocent members of the general public when someone carrying a loaded and accessible gun is either mistaken about his [or her] need for self-defense or just a poor shot." *Mimes*, 2011 IL App (1st) 082747, ¶ 79.

*Aguilar*, 408 Ill. App. 3d at 146 (holding that "the AUUW statute *** is substantially related to this important governmental objective").

¶ 34    Thus, we find that the statute at issue passes intermediate scrutiny.

¶ 35                                   IV. Illinois Constitutional Right

¶ 36    In the headings in his appellate brief, respondent claims that the statute also violates our state constitution. The Illinois Constitution provides: "Subject only to the police power, the right of the individual citizen to keep and bear arms shall not be infringed." Ill. Const. 1970, art. I, § 22.

¶ 37    Although respondent claims in the headings in his brief to be raising a state challenge as well as a federal challenge, we previously noted that there is no discussion of the Illinois constitutional right in his brief. His discussion of the aggravated use statute is based entirely on the second amendment right found in the United States Constitution and the case law interpreting it. "Points not argued are waived ***." Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008); *Wilson*, 407 Ill. App. 3d at 775-76 (finding that plaintiffs had waived any argument concerning the Illinois Constitution's right to bear arms where they made a "one-sentence statement" and failed to provide any support or analysis).

¶ 38      Although we find that respondent waived his state constitutional argument by failing to argue it, we observe that we have rejected this argument at least twice before. *Aguilar*, 408 Ill. App. 3d at 149-50; *Mimes*, 2011 IL App (1st) 082747, ¶ 82. First, we already found above that the second amendment does not afford respondent protection and he "cites no authority to persuade us that the protection of his right to bear arms under the Illinois Constitution is greater than that afforded under the second amendment." *Mimes*, 2011 IL App (1st) 082747, ¶ 82. Second, as we explained in *Aguilar*, the Illinois Supreme Court in *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 498 (1984), upheld a city ordinance absolutely prohibiting the possession of handguns; and, even if this ruling should be revisited in light of *Heller* and *McDonald*, "only our [Illinois] supreme court may change its [own] holding." *Aguilar*, 408 Ill. App. 3d at 149-50. Thus, we find respondent's state constitutional argument both waived and unpersuasive.

¶ 39                                                  CONCLUSION

¶ 40      For the foregoing reasons, we decline respondent's offer to reject our precedent and we continue to hold, as we have before, that the aggravated unlawful use of a weapon statute does not offend the second amendment. We therefore affirm the adjudication of delinquency.

¶ 41      Affirmed.